IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SHIRLEY G. GAMBILL,         )
                            )
    Plaintiff,              )
                            )
vs.                         )   Case No.  CIV-15-1271-F
                            )
CAROLYN W. COLVIN, acting   )
Commissioner Social Security)
Administration,             )
                            )
    Defendant.              )

## REPORT AND RECOMMENDATION

Shirley G. Gambill (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision that she was not "disabled" under the terms of the Social Security Act.[1]  *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A).  The matter is before the undersigned Magistrate Judge by referral for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).  Docs. 3, 13.

After a careful review of the record, the parties' briefs, and the relevant authority, the undersigned recommends the entry of judgment affirming the Commissioner's final decision.  *See* 42 U.S.C. § 405(g).

---

[1]    This was the Commissioner's final decision on Plaintiff's June 24, 2012 application for a period of disability and disability insurance benefits.  *See* Administrative Record (AR) 17.

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. Administrative Law Judge (ALJ) findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met her burden of proof. AR 13-16; *see* 20 C.F.R. § 404.1520(a)(4); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the sequential analysis). Specifically, the ALJ found Plaintiff:

(1) was severely impaired, first, by obesity, second, by osteoarthritis in the right knee, third, by residual pain post 2010 total left knee replacement, and fourth, by residuals post endometrial adenocercinoma;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(2) had the residual functional capacity[2] (RFC) to perform sedentary work and could occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs but could never climb ladders, ropes, and scaffolds;

(3) was able to perform her past relevant work (PRW) as a city treasurer and so,

(4) had not been under a disability, as defined in the Social Security Act, from April 17, 2009—her alleged onset of disability date—through August 22, 2014, the date of the ALJ's decision.

AR 13-16.

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

### 2. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision in this case. AR 1-6. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standards.

A court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### B. Plaintiff's claims of error.

Plaintiff generally claims the ALJ's decision is grounded on legal error and lacks substantial evidentiary support. Doc. 12, at 6. In four specific claims, she argues the ALJ erred by failing to: (1) "correctly determine that [Plaintiff's] right knee degenerative joint disease meets or equals Listing §1.02," *id.*; (2) "adequately assess the functional impact of [Plaintiff's] morbid obesity pursuant to SSR 02-01p," *id.* at 11; (3) "properly evaluate [Plaintiff's] credibility," *id.* at 14; and (4) "properly evaluate the effects of [Plaintiff's] need for additional rest periods on her ability to perform PRW or any other work activity." *Id.* at 18.

The Commissioner filed a brief in support of her final decision and Plaintiff replied. Docs. 17, 18.[3]

---

[3] This Court's local rules (LCvR) include formatting requirements directed, in part, to readability. For example, "[a]ll papers presented to the clerk for filing . . . *shall* be double-spaced . . . ." LCvR5.2(a) (emphasis added). The Commissioner's brief, Doc. 17, does not meet this requirement. Similarly, by setting limitations on the length and content of briefs, the local rules, in part, secure judicial resources. For example, "[r]eply briefs *shall* be limited to 10 pages in length unless otherwise authorized by the court . . . ." LCvR7.1(i). Plaintiff's attorneys, who did not seek authorization to do so, have filed a thirteen-page reply brief. Doc. 18.

**The undersigned advises that in matters referred to the undersigned, any future briefs filed by the Commissioner, Timothy M. White, or Richmond J. Brownson, will likely be ordered stricken if those briefs do not conform to this Court's local rules.**

## C. Analysis of Plaintiff's claims of error.

### 1. Whether the ALJ erred in determining Plaintiff was not presumptively disabled under Listing 1.02A by her right knee impairment.

"The Listing of Impairments . . . describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an [adult] from doing any gainful activity. . . ." 20 C.F.R. § 404.1525(a). It is Plaintiff's "step three burden to present evidence establishing her impairments meet or equal listed impairments . . . ." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

Listing 1.02A is met if Plaintiff has a major dysfunction of her right knee "resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.02A. There, the SSA defines what it "[m]ean[s]" by "[i]nability to ambulate effectively," explaining that: "an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* at § 1.00B2b(1). In that same provision, the SSA defines "ineffective ambulation" "as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.*

The SSA then states:

6

to ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Pt. 404, Subpt. P, App. 1

The ALJ found at step three of the sequential analysis that Plaintiff's "osteoarthritis in right knee does not meet the severity requirements of Section 1.02 . . . *due to the absence of evidence of the inability to ambulate effectively.*" AR 14 (emphasis added).[4] Plaintiff claims this is error because "she does not have the ability to ambulate effectively" as defined by the Regulations. Doc. 12, at 10. She points to her own representations in function reports: she "is unable to go to the grocery store without the assistance of her husband"; she "must use an electric cart while shopping"; she "must microwave her food in order to avoid long periods of standing in

---

[4] Plaintiff recites medical findings regarding her right knee dysfunction, Doc. 12, at 3-4, and "argues this evidence shows she meets or equals the requirement of part one of the requirements of Listing § 1.02." *Id.* at 4. This is not in dispute; the ALJ's decision rests on "the absence of evidence of the inability to ambulate effectively." AR 14.

7

the kitchen"; she "must sit down and take breaks when folding her laundry"; and she "is no longer able to do chores such as vacuuming and cleaning her house." *Id.* at 10-11.

But what Plaintiff relies on, *id.* at 4-7, are her own subjective "findings" of functional limitations rather than, as required, "*objective* medical and other findings," 20 C.F.R § 404.1525(c)(3) (emphasis added), of her "inability to ambulate effectively" as a result of her severe right knee impairment. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.02A. The only objective medical evidence she relies on is the report of her September, 2012 consultative examination physician, and much of what she highlights are, once again, her subjective reports to Dr. Cooper. Doc. 12, at 4-5; AR 357-64. Significantly, what Plaintiff fails to note is that Dr. Cooper found, and the ALJ decided,[5] that Plaintiff's "[g]*ait is safe and stable with appropriate speed. She does not ambulate with the aid of assistive devices. She has no identifiable muscle atrophy noted. Heel/toe walking is normal. Tandem gait is within normal limits.*" AR 360 (emphasis added).

---

5   The ALJ found Plaintiff had "exhibited safe and stable gait with appropriate speed and without the use of an assistive devices." AR 14. In *Fischer-Ross*, 431 F.3d at 734, the Tenth Circuit held that a court could affirm an ALJ's step three decision when "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review."

8

Plaintiff concludes that

> [b]oth the Function Report and her testimony establish [her] inability to ambulate effectively. She is unable to carry out even routine ambulatory activities, including vacuuming, cooking, laundry, and shopping. She meets or equals the second part of the test required by Listing §1.02. The evidence meets or equals the Listing's example of ineffective ambulation: the "inability to carry out routine ambulatory activities, such as shopping and banking."

Doc. 12, at 11. She does not, however, direct the court to *any* authority holding that a step three finding of presumptive disability can be made on the basis of her self-reports and testimony alone.

Plaintiff fails to establish the ALJ erred in finding that Plaintiff's right knee impairment does not meet the severity requirements of Section 1.02.

### 2. Whether the ALJ properly assessed the functional impact of Plaintiff's morbid obesity.

Plaintiff's claim here is that "[b]oth in testimony and in her Function Report, [she] establishes that her severe osteoarthritis in her right knee, along with her "extreme" and "morbid" obesity, restricts her ability to ambulate effectively. (T 27-43, 217-224)." *Id.* at 12. She contends that apart from "mentioning that [she] was morbidly obese, the ALJ only recognized that [she] was not in acute distress." *Id.* She maintains the ALJ "failed to properly consider [her] obesity as a disabling condition on its own" [and] "failed to properly analyze the obesity evidence in conjunction with her osteoarthritis and the affect that these conditions have upon her RFC." *Id.*

9

She claims "the ALJ failed to properly evaluate how [her] 'morbid' and 'extreme' obesity affects her 'severe' osteoarthritis in her right knee, along with the residual post-surgical pain in her left knee, and how these conditions together affect her ability to 'ambulate effectively.'" *Id.* at 12.

To the contrary—and consistent with Social Security Ruling (SSR) 02-1p, 2002 WL 34686281, at *3—the ALJ considered Plaintiff's obesity in the sequential evaluation process, finding at step two that Plaintiff's obesity was a severe impairment. AR 13. At step three, he then affirmed that Plaintiff's "obesity has been considered pursuant to the provisions of SSR 02-1p." *Id.* at 14. He specifically found Plaintiff *"d[id] not have obesity-related Listing-level severity chronic disease of the* cardiovascular, respiratory, or *musculoskeletal body system* [and] d[id] not have obesity-related Listing-level severity diabetes mellitus, gall bladder disease, hypertension, heart disease, peripheral vascular disease, dyslipidemia, stroke, osteoarthritis, sleep apnea, cancer, or depression." *Id.* (emphasis added).

Plaintiff correctly claims the SSA "may also find that obesity, by itself, is medically equivalent to a listed impairment." SSR 02-1p, 2002 WL 34686281, at *5. Specifically, "if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of

10

one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and [the SSA] will then make a finding of medical equivalence." *Id.* Nonetheless, Plaintiff incorrectly claims "[the ALJ] failed to properly consider [Plaintiff's] obesity as a disabling condition on its own." Doc. 12, at 12. As addressed *supra*, the ALJ specifically found no evidence of an inability to ambulate effectively, AR 14,[6] and Plaintiff has not shown that determination to be erroneous.

The ALJ went on to consider Plaintiff's RFC[7] and the evidence bearing on the combined impact of her obesity and her severe knee impairments. *Id.* He found the evidence showed Plaintiff's "BMI was 57.7"[8] and she was "morbidly obese." *Id.* He found the evidence also established that Plaintiff's "knees showed no effusion and were stable in all range of motion exercises"

---

[6] In any event, there is nothing to substitute in this case. The ALJ did not rest his step three finding on the lack of medical findings of a major dysfunction of a knee joint. AR 14.

[7] The ALJ acknowledged "[a]n individual's [RFC] is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments." AR 12; *see* SSR 02-1p, 2002 WL 34686281, at *6 ("An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time.").

[8] Plaintiff suggests "[t]he ALJ ignored this BMI finding and failed to find that [Plaintiff] met the criterion for extreme obesity." Doc. 12, at 13. Demonstrably, the ALJ did not ignore Plaintiff's BMI. Moreover, the levels of obesity "describe the extent of obesity, but they do not correlate with any specific degree of functional loss." SSR 02-1p, 2002 WL 34686281, at *2.

and that her gait was "safe and stable with appropriate speed and without the use of an assistive device[]. *Id.* at 14, 16. As addressed in greater detail below, he also considered Plaintiff's own statements about the combined impact of her obesity and her knee impairments:

> The claimant testified that she is *disabled due to obesity*, with a height of 63 inches and a weight of 330 pounds, with a recent 50 pound weight gain due to inactivity; *and osteoarthritis in the knees with associated weight bearing instability, lower extremity weakness, and swelling*. The claimant estimated that her pain level is an eight on a one-to-ten scale. The claimant stated that her pain is of sufficient severity to affect her ability to sleep. The claimant stated that her knee pain is aggravated by activity. The claimant stated that her obesity requires her to elevate her legs during the day. The claimant stated that she is capable of lifting ten pounds, walking one block, and sitting 20 minutes. The claimant attempts to alleviate her knee pain with topical creams and a heating pad. The claimant stated that she uses only over-the-counter pain medication. The claimant stated that she must use an electric wheelchair when shopping.

*Id.* at 15 (emphasis added).

In addition, the ALJ gave great weight to the opinion of one of Plaintiff's physicians who had noted Plaintiff "is extremely overweight and this certainly contributes to her ability to be mobile." *Id.* at 16, 321. The physician had further opined that Plaintiff "is best suited for a sedentary occupation, one that would not require her to be on her feet for an extended period of time. Certainly claiming stairs is difficult for her. Also crouching or squatting or activities of that nature would also be difficult for her." *Id.* at 321. The ALJ's RFC reflects these limitations. *Id.* at 14.

Plaintiff—who fails to acknowledge the ALJ's extensive obesity findings—does not cite to any authority requiring that the ALJ do more, and has not shown "[t]he ALJ erred by failing to adequately assess the functional impact of [her] morbid obesity pursuant to SSR 02-01p." Doc. 12, at 11.

### 3. Whether the ALJ properly evaluated Plaintiff's credibility.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citation, internal brackets, and internal quotation marks omitted). An ALJ's credibility findings reflect his consideration of Plaintiff's allegations of disabling symptoms in order to "decide whether he believe[d them]." *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (citation omitted). In making this determination, an ALJ should consider factors such as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

13

*Wilson v. Astrue*, 602 F.3d 1136, 1145 (10th Cir. 2010) (citation and quotation marks omitted). But, as long as the ALJ provides the specific evidence he has relied on in assessing a claimant's credibility, "a formalistic factor-by-factor recitation of the evidence" is not required in the Tenth Circuit. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ considered Plaintiff's testimony at her April 2014 administrative hearing and her contention that she had suffered for five years—since April 2009—from *disabling* symptoms, including pain, lower extremity weakness, instability, and swelling, due to her obesity and knee impairments. AR 15, 26-44. He concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . .; [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible *for the reasons explained in this decision.*" *Id.* at 15 (emphasis added).

Among these reasons was the estimate Plaintiff gave of her level of *disabling* right-knee pain—for five years "[m]ost of the time," *id.* at 42— coupled with her description of how she has sought relief from that pain. *Id.* at 15. "[O]n a scale of zero to 10," she "rate[d the] pain in [he]r . . . right knee, just on a typical day" as "[a]n eight." *Id.* at 42. Nonetheless, she "just

14

take[s] over-the-counter" medication "for that pain . . . ." *Id.* She also uses IcyHot and a heating pad. *Id.* at 43.

The ALJ also contrasted Plaintiff's claim of *disabling* weakness and instability with her statements that she "could probably walk a block" and that she leaves her home periodically "to go to the post office, which is two blocks away from the house." *Id.* at 15, 32, 36. She also drives a car and attends church on a regular basis, "miss[ing] some Sunday[]s." *Id.* at 15, 195, 196.

The ALJ also documented discrepancies between the objective medical evidence and Plaintiff's alleged *disabling* symptoms and limitations. He stated that "[o]n September 27, 2010, [Plaintiff's] severe osteoarthritis in the left knee was treated with left total knee arthroplasty" and that on "post-surgical follow-up on November 16, 2010, [Plaintiff] was noted to be 'doing very well' and 'ambulatory . . . without the use of external aids.'" *Id.* at 16. On physical examination following Plaintiff's complaint of right knee pain in September 2012, her "knees showed no effusion or edema and were stable in all range of motion exercises." *Id.* Her "[g]ait was safe and stable with appropriate speed" and "[s]he . . . ambulate[d] without the aid of assistive devices." *Id.* The examining physician did not note any "identifiable muscle atrophy . . . ." *Id.*

In sum, the ALJ properly and sufficiently explained the required link between the evidence of record and his finding that Plaintiff's allegations of *disabling* pain and other limitations were not entirely credible. "[H]is approach performed the essential function of a credibility analysis by indicating to what extent he credited what [Plaintiff] said when determining the limiting effect of [Plaintiff's] symptoms." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012).

The ALJ's determination—that Plaintiff's subjective complaints are not entirely believable—is supported by substantial evidence and is free from legal error.

### 4. Whether the ALJ erroneously failed to include additional functional limitations in his assessment of Plaintiff's RFC.

Plaintiff contends "[t]he ALJ failed to properly consider the effect of additional rest periods, along with the necessity of periodic leg elevation periods, in order to reduce joint swelling, and the effect of fatigue from inadequate sleep when considering [her] ability to perform . . . work activity." Doc. 12, at 18. She does not support her claim with evidence of any functional requirement for rest or leg elevation periods imposed by a medical source and overlooked by the ALJ. Instead, she relies on her own testimony to establish the limitations. *Id.* at 18-20. The ALJ's reliance on that testimony hinges on Plaintiff's credibility, and, as previously discussed, the

16

ALJ properly discounted the believability of Plaintiff's allegations of *disabling* limitations.[9]

Plaintiff attempts to paint this claim as a step four issue, maintaining "[t]he court must consider how these limitations affect [Plaintiff's] ability to perform her PRW or any other work. *Id*. at 18. She cites to one of the ALJ's hypothetical questions to the vocational expert (VE) and to the VE's response that a hypothetical claimant "would not be able to maintain competitive employment" if that hypothetical "claimant would require breaks in excess of standard breaks such that she would not be able to sustain persistence and pace on work-assigned tasks throughout an eight-hour day." *Id*. at 19; AR 45-46. But the ALJ was not required to accept the VE's answer to hypothetical questioning that included limitations "claimed by plaintiff but not accepted by the ALJ as supported by the record." *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995). Plaintiff fails to demonstrate reversible error.

## III. Recommendation and notice of right to object.

The undersigned recommends the entry of judgment affirming the Commissioner's final decision.

---

[9] "[T]he ALJ's credibility and RFC determinations are inherently intertwined," *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009), and, by asserting error in the ALJ's credibility assessment, Plaintiff challenges the ALJ's assessment of her RFC.

17

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court by December 12, 2016, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 21st day of November, 2016.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE